UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LUCAS E. RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:04CV1814 TIA |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Background**

On February 8, 2002, Plaintiff, Lucas Riley, was involved in a motor vehicle accident at the intersection of U.S. Highway 63 and Christopher Drive in Rolla, Missouri. As a result, Plaintiff suffered serious injuries. Specifically, on the date of the incident, Plaintiff was driving a 1999 Grand Prix. He was facing east on Christopher Drive, waiting to make a left turn and head north on Highway 63. When Plaintiff thought it was clear, he proceeded to turn onto Highway 63. As he entered the intersection, a pick-up truck heading south on Highway 63 broadsided the Grand Prix on Plaintiff's side. Plaintiff claimed that the mailboxes located on the west side of Highway 63 just north of Christopher Drive obstructed his ability to see the truck, which resulted in the collision and Plaintiff's injuries. Prior to the accident, the Post Office received several complaints from residents regarding the obstructed view.

On December 29, 2004, Plaintiff filed a complaint against the United States Postal Service (USPS) under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging that the USPS negligently placed, maintained, and failed to relocate mailboxes near the intersection of Christopher Drive and Highway 63 after receiving notice that they constituted dangerous and unlawful sight restrictions. (Complaint, ¶¶ 7-10) Plaintiff seeks damages for lost wages, pain, and medical expenses. (Complaint, ¶ 12) On November 10, 2005, Defendant filed a motion to dismiss for lack of subject matter jurisdiction.

Defendant maintains that it was performing a discretionary function with respect to placement of the mailboxes and thus is immune from any liability.

### Standards on a Motion to Dismiss

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move for dismissal based on lack of jurisdiction over the subject matter. "Dismissal under Rule 12(b)(1) is appropriate if the issue before the court is whether the plaintiff has failed to satisfy a threshold jurisdictional requirement." Schubert v. Bethesda Health Group, Inc., 319 F. Supp. 2d 963, 966 (E.D. Mo. 2004) (citation omitted). When a court considers a Rule 12(b)(1) motion, it has "'broader power to decide its own right to hear the case than it has when the merits of the case are reached.' … Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990) (quoting and citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). Further, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Id. at 730 (citation omitted).

Lawsuits lodged against the United States of America are barred by sovereign immunity unless the United States consents to such suit. Hercules, Inc. v. United States, 516 U.S. 419, 422 (1996) (citations omitted). However, "[c]ongress waived the sovereign immunity of the United States by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment." C.R.S by D.B.S. v. United States, 11 F.3d 791, 795 (8th Cir. 1993). Under the FTCA, the government may still retain immunity from suit through certain exceptions. Id. One such exception provides that governmental departments are immune from tort liability where they perform "'a discretionary function or duty on the part of the federal agency or an employee of the Government.'" Lopez v. United States, 376 F.3d 1055, 1057 (10th Cir. 2004) (quoting 28 U.S.C. § 2680(a)). Thus, "the question of negligence is irrelevant to the applicability of the discretionary function exception." Id.

In order to determine whether the discretionary function exception applies, the United States

2

Supreme Court has set forth a two-part test: (1) the conduct must be discretionary, involving "'an element of judgment or choice;'" and (2) the judgment must be "'of the kind that the discretionary function exception was designed to shield.'" C.R.S., 11 F.3d at 795-796 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). However, where the duty was mandatory and the government agency or employee violated such duty, the discretionary function exception does not apply because there was no choice involved. Appley Bros. v. United States, 164 F.3d 1164, 1170 (8th Cir. 1999) (citation omitted).

**Discussion**

In the instant case, Defendant asserts that it performed a discretionary function in determining where to place the mailboxes at issue. Furthermore, Defendant also contends that the removal of the mailboxes was also a part of its discretionary function, granting Defendant immunity from this suit. Plaintiff, on the other hand, argues that the discretionary function exception does not apply in the instant case because Defendant's placement of and failure to remove the mailboxes violated applicable American Association of State Highway and Transportation Officials ("AASHTO")[1] and Missouri design standards regarding minimum sight triangles at intersections such as the one at issue. Specifically, Plaintiff maintains that the Post Office has the mandatory duty to comply with federal Department of Transportation ("DOT") regulations under 23 C.F.R. § 625.4.

The parties do not dispute that the Post Office has the discretion to determine the placement of mailboxes according to various standards such as efficiency and safety. The issues before this Court are whether any rule required the Post Office to place the boxes elsewhere or remove the boxes due to mandatory highway regulations and whether its initial placement of or refusal to remove the boxes violated this duty.

According to the Post Office Manual ("POM") Subpart 632.524 pertaining to the location of

---

[1] AASHTO has published "A Policy on the Geometric Design of Highways and Streets" ("Green Book"), which sets forth the roadway engineering and safety standards and policies for National Highway System roadways.

3

mailboxes:

> Curbside mailboxes must be placed so that they may be safely and conveniently served by carriers without leaving their conveyances. They must be reasonably and safely accessed by customers. Boxes must also be on the right-hand side of the road and in the carrier's direction of travel in all cases where driving on the left-had side of the road to reach the boxes would pose a traffic hazard or violate traffic laws and regulations. On new rural or highway contract routes, all boxes must be on the right side of the road in the carrier's direction of travel. Boxes must be placed to conform to state laws and highway regulations. . . .

(Def. Exh. E-B, p. 1) Further, the Postmaster of Rolla, Missouri issued a declaration stating that the Postmaster may choose the mode of delivery options of curbside, sidewalk, or central delivery. The Post Office determined that curbside delivery was the most efficient mode for the Christopher Drive route, as that route was 74 miles long, and many of the homes off Christopher Drive were miles from the highway. In addition, many of the roads leading to homes were not maintained well enough to allow safe and efficient delivery. (Def. Exh. E, pp. 1-2; Def. Exh. E-A, p. 1) Defendant asserts that this decision is protected by the discretionary function exception.

In addition, Defendant contends that the regulations cited by Plaintiff are merely guidelines and not mandatory rules. To the extent that AASHTO's Green Book contains mandatory language, Defendant maintains that those rules do not apply to the USPS, as it does not design, build, own, maintain, or operate any Federal-aid system highways.

Plaintiff, on the other hand, contends that AASHTO's Green Book, incorporated by reference at 23 C.F.R. § 625.4, contains mandatory policies that the Defendant must follow regarding sight triangles free from obstruction. Specifically, the Plaintiff references the section on Departures--Sight Triangle, which provides:

> After a vehicle has stopped at an intersection, the driver must have sufficient sight distance to make a safe departure through the intersection area. … [T]he intersection design should provide adequate sight distances for any of the various vehicular maneuvers such as crossing the intersecting roadway or turning into the intersecting roadway. These

4

> maneuvers must be provided for as well as the sight distances which must be provided for vehicles approaching on the major highway either from the right or the left.
>
> Where traffic on the minor road of an intersection is controlled by stop signs, the driver of the vehicle on the minor road must have sufficient sight distance for a safe departure from the stopped position even though the approaching vehicle comes in view as the stopped vehicle begins its departure movements. … The driver of this vehicle entering the intersection from the major road must have an unobstructed view within the sight triangle.

(Pl. Exh. 2, pp. 2-3, Green Book pp. 697, 702) Plaintiff asserts that these mandates are applicable to the USPS.

After considering the numerous pleadings and exhibits in this case, along with the oral arguments, the undersigned finds that this Court lacks subject matter jurisdiction and that the case must be dismissed. In Lopez v. United States, plaintiffs sued the USPS under the Federal Tort Claims Act after their vehicle collided with a truck at an intersection of a U.S. Highway. 376 F.3d 1055, 1057 (10th Cir. 2004). Plaintiffs alleged that "a row of mailboxes on the shoulder of the highway obstructed their view of the intersection" and that the USPS "negligently failed to take proper account of the safety of the driving public when locating the mailboxes." Id. The district court, however, dismissed the action for lack of subject matter jurisdiction because the USPS's actions constituted discretionary functions which rendered it exempt from FTCA liability pursuant to 28 U.S.C. § 2680(a), and the Tenth Circuit Court of Appeals affirmed. Id. at 1057, 1061.

The Lopez court noted that, pursuant to the Postal Operations Manual, "if mailboxes are placed in violation of state law or regulations, the USPS is compelled by its own regulations to relocate them. This is a nondiscretionary mandate." Id. at 1058. The plaintiffs relied on the New Mexico Administrative Code[2]

---

[2] Title 18, § 20.5.9.2 of the Code prohibited "any encroachments that present 'a danger to the health, safety, or welfare of the motoring public, or which interfere with the operations of the [State Highway] Department.'" Lopez, 376 F.3d at 1058 (quoting N.M. Admin. Code tit. 18, § 20.5.9.2).

to support their argument that the mailboxes constituted a danger within the meaning of the code and thus the USPS's placement of the mailboxes violated the regulation and fell outside of the discretionary function exception. Id. The Lopez court disagreed with the plaintiffs, finding that:

> [a]s an initial matter, it is far from clear that § 20.5.9.2, standing alone, is sufficiently clear that it could be said to remove discretion from federal officials with regard to the placement of mailboxes. Presumably, all obstructions present some risk, however small, to the public, and determinations regarding the tolerable degree of risk could be said to involve the exercise of discretion.

Id. (citations omitted). The court further reasoned that the New Mexico State Highway Department regulations vested authority in that department to determine whether roadside conditions constituted unlawful encroachments or hazardous obstructions. Id. Because the State Highway Department "has not identified an encroachment as violating the Code, and has not issued the required notification nor removed the encroachment," the Lopez court held that the USPS did not violate a nondiscretionary duty. Id. at 1059. In addition, while a State Highway Department employee sent a letter to a Post Office employee expressing concern over sight restrictions caused by the mailboxes and encouraging the Post Office to relocate them, the court noted that the letter did not declare the mailboxes to be an unlawful encroachment or hazardous obstruction. Id. Absent notification from the State Highway Department regarding illegal positioning of the mailboxes, the court found that the USPS had the authority to exercise discretion in determining a suitable location for the mailboxes and could consider the employee's expressions of concern for sight obstruction in determining where to place the mailboxes.[3] Id.

While the Eighth Circuit Court of Appeals has addressed some similar issues regarding the USPS and its discretionary function, it has not addressed the issue now before this Court. Although Plaintiff Riley

---

[3] The court later reiterated that "even drawing all inferences in Plaintiffs' favor, there is no way to construe the Postal Service's obligation to obey New Mexico law and place its mailboxes safely, without specific notification that those particular mailboxes were in violation of that regulation . . ." Lopez, 376 F.3d at 1061.

relies on a AASHTO and Missouri Design Standards to support his assertion that Defendant violated a nondiscretionary mandate in the placement of and failure to remove the mailboxes, the undersigned finds that the sound reasoning of the Lopez court applies.

First, the Rolla Post Office was performing a discretionary function in the determination of mailbox placement. As previously stated, mode of delivery falls within the discretion of the USPS. The Rolla Postmaster exercised his discretion and determined that curbside mail delivery was the safest and most efficient mode of delivery for the Christopher Drive area. (Resp. Exh. E, ¶ 7) Further, as found by the Lopez court, the USPS has the power "to exercise its discretion and to determine a suitable location for its mailboxes." Lopez, 376 F.3d at 1059; see also Shrieve v. United States, 16 F. Supp. 2d 853, 858 (N.D. Ohio 1998) (delivery route configuration is within the discretion of the postmaster). The court in Shrieve specifically noted that "[n]o mandatory statute, regulation or policy prevents a postmaster from establishing or failing to alter" curbside delivery to only one side of the highway. Schrieve, 16 F. Supp. 2d at 858. Here, placement of the mailboxes and the decision not to alter the route clearly involved a choice, thus satisfying the first prong of the two-part test in determining whether the discretionary function exception applies. C.R.S by D.B.S. v. United States, 11 F.3d 791, 795-796 (8th Cir. 1993); see also Def. Exh. E, ¶ 7 (Postmaster may choose mode of delivery under the Postal Operations Manual, and the Rolla Post Office had chosen curbside delivery for more than 20 years prior to the accident).

The undersigned also finds that the Defendant has satisfied the second part of the test by demonstrating that the judgment was the kind that the discretionary function exception was designed to shield. "The purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Appley Bros., 164 F.3d at 1170 (quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984)). As such, the decision needs to be susceptible to policy analysis for the discretionary function exception to apply. Shrieve, 16 F. Supp. 2d at 860.

7

Under 39 U.S.C. § 403(b)(1), "It shall be the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." Placement of mailboxes is "susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety." Lopez, 376 F.3d at 1059-1060. While actual consideration of policy questions is not legally relevant, the record demonstrates that the Post Office did fully consider mode of delivery and route configuration. See Lopez, 376 F.3d at 1061 (citing United States v. Gaubert, 499 U.S. 315, 325 (1991)). According to the Rolla Postmaster, the Rolla Post Office surveyed the route in 2001. "As a result of the survey, [the post office] decided to keep the current mode of delivery and route configuration on HCR 65435 taking into consideration factors including manpower, efficiency, economy, and safety." (Def. Exh. E, ¶ 8) As aptly stated by the court in Shrieve, "[t]he postmaster's decision clearly was grounded in social, political, and economic policy and thus [was] protected by the discretionary function exception found at 28 U.S.C. § 2680(a)." Shrieve, 16 F. Supp. 2d at 860; see also Lopez, 376 F.3d at 1061 (relocation of mailboxes is susceptible to policy analysis and is a discretionary function under the FTCA).

Finally, the undersigned finds that the AASHTO and Missouri design standards regarding minimum sight triangles at intersections are not mandatory, nondiscretionary rules applicable to the USPS. While Plaintiff relies on Aslakson v. United States, 790 F.2d 688 (8th Cir. 1986) for the proposition that the discretionary function exception does not apply where governmental employees failed to comply with previously adopted safety policies, the undersigned finds this case to be inapposite. In Aslakson, the court found that the Western Area Power Administration failure to comply with its own safety policy regarding the maintenance of electrical transmission lines did not fall within the scope of the discretionary function exception. Id. at 693-694. In that case, the policy's mandate was clear that the company must raise its power lines if they constituted a safety hazard. Id. at 693.

No such clear mandate exists in the present case. The AASHTO standards which the Plaintiff

insists apply to the USPS do not impose mandatory sight line requirements on the Defendant. The referenced rule, 23 C.F.R. Part 625, is a policy set forth by the Federal Highway Administration ("FHWA") pertaining to "the design standards which apply to **highway construction** and **reconstruction projects** on the NHS [National Highway System]." (Pl. Exh. 3) (emphasis added). The USPS is not involved in designing, constructing, or maintaining the highway system. Indeed, Nicholas Artimovich, a Highway Engineer with the United States Department of Transportation ("DOT") declared that in order to receive federal funds for NHS road construction, states must comply with the FHWA regulations for design standards. (Def. Exh. A, ¶ 5) Additionally, the Green Book, codified in the C.F.R., contains only guidelines with respect to mailbox placement. (Def. Exh. A, ¶ 6; Def. Exh. A2) The specific references to mailbox placement contain discretionary language such as "should" and "may," not the mandatory language that Plaintiff asserts. (Def. Exh. A2, pp. 4-5) Further, as stated by Mr. Artimovich:

> The FHWA and the DOT do not have any specific and mandatory statutory regulatory requirements to which they must adhere with respect to mailbox placement, location or maintenance along highways. In turn, the FHWA and the DOT do not impose any specific and mandatory requirements upon the States with respect to the placement, location, or maintenance of mailboxes along highways.

(Def. Exh. A, ¶ 7)

In short, Plaintiff has failed to demonstrate that the Green Book provides mandatory directives to the USPS regarding sight triangles. It is telling that, while some residents complained in an unofficial capacity,[4] neither MODOT nor the FHWA contacted the Postmaster regarding any alleged sight triangle violations. See Lopez, 376 F.3d at 1059 ("Without notification by the SHD that the mailboxes were positioned illegally, the USPS was empowered to exercise its discretion and to determine a suitable location

---

[4] Mr. Mayfield, the Rolla Postmaster, stated that he found no written complaint or records of any complaint prior to the date of the accident concerning requests for relocation of the boxes due to a visual hazard. (Def. Exh. E, ¶ 16) However, Plaintiff contends that residents lodged complaints for two years prior to the accident. (Pl. Exh. 1, ¶¶ 12, 18; Pl. Exhs. 3 & 4)

for its mailboxes."). While the undersigned is very sympathetic to Plaintiff's complaint, the Court is bound by the legal mandates of the FTCA. The USPS' decision regarding the location and/or removal of the mailboxes at issue was a discretionary function within the meaning of the FTCA. Plaintiff has failed to demonstrate otherwise and meet his burden of proving that subject matter jurisdiction exists. Therefore, the USPS is entitled to sovereign immunity, and this Court will dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. #12] is **GRANTED**.

         /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  26th  day of September, 2006.